**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| PRISCILLA SMITH,<br><br>        Plaintiff,<br><br>v.<br><br>THE TOWNSHIP OF CLINTON, et al.,<br><br>        Defendants. | Civil Action No. 17-935 (MAS) (DEA)<br><br>**MEMORANDUM OPINION** |

### SHIPP, District Judge

This matter comes before the Court on a motion for partial summary judgment filed by Plaintiff Priscilla Smith ("Plaintiff") (ECF No. 22) and a motion for summary judgment filed by Defendants Clinton Police Department ("Clinton PD"), Police Officer Joseph Sangiovanni ("Officer Sangiovanni"), and the Township of Clinton ("Township") (collectively "Defendants") (ECF No. 23). Both Plaintiff and Defendants filed opposition to their adversaries' motion (ECF Nos. 26, 27) and replied (ECF Nos. 29, 30). The Court has carefully considered the parties' submissions and decides this matter without oral argument pursuant to Local Civil Rule 78.1. For the reasons set forth below, Plaintiff's motion is DENIED, and Defendants' motion is GRANTED.

I.   **Background**[1]

This case arises out of a traffic stop in Clinton, New Jersey that resulted in the arrests of Plaintiff and three other individuals: Leslie Fox ("Fox"), Gregory Carmichael ("Carmichael"), and Bianca Mitchell ("Mitchell"). (Pl.'s SUMF ¶ 16.) On December 4, 2015, Officer Sangiovanni was on duty in a marked police car driving on Route 78 at about 2:52 p.m. (Defs.' SUMF ¶ 2.) He saw a van with Pennsylvania license plates traveling in the left lane and conducted a random computer inquiry on the registration, which revealed that the van had been entered into the National Crime Information Center ("NCIC") electronic database as stolen. (*Id.* ¶ 3; Pl.'s SUMF ¶ 10.)[2] The database reflected that the New York City Police Department was the reporting agency and the vehicle was registered in Pennsylvania to Bernard Hayes, Jr. of Philadelphia. (Defs.' SUMF ¶¶ 6, 7.) Officer Sangiovanni contacted dispatch, which reported that the van was stolen,[3] and he proceeded to pull the van over and wait for a back-up officer to

---

[1] For efficiency, the Court omits separate citations to Plaintiff's Response to Defendants' Statement of Material Facts (Pl.'s Resp. to Defs.' SUMF, ECF No. 26-1) where Plaintiff clearly admits to a fact contained in Defendants' Statement of Material Facts (Defs.' SUMF, ECF No. 23-1). Similarly, the Court omits separate citations to Defendants' Response to Plaintiff's Statement of Material Facts (Defs.' Resp. to Pl.'s SUMF, ECF No. 27) where Defendants clearly admit to a fact contained in Plaintiff's Statement of Material Facts (Pl.'s SUMF, ECF No. 22-1). The Court further omits duplicative citations to both parties' statements of facts where the parties allege identical facts. Further, as a general matter and as noted in footnotes that follow, Plaintiff's Response to Defendants' Statement of Material Facts is largely non-compliant with Local Civil Rule 56.1 and contains improper arguments, conclusions, and purported disputes of fact without proper citation to the record.

[2] Plaintiff claims: (i) that this statement is "a factual conclusion, not a fact within the meaning of Rule 56.1"; (ii) to the extent a response is required, the stop was not random, but "arbitrary, discretionary and pretextual"; and (iii) "there is no foundation to dispute that the vehicle was entered into the NCIC database." Plaintiff, however, fails to provide any citations to the record, and accordingly, this statement is deemed undisputed. *See* L.Civ.R. 56.1(a) ("[A]ny material fact not disputed shall be deemed undisputed for purposes of the summary judgment motion.").

[3] Plaintiff claims that this statement is a "factual conclusion" not a fact and disputes Defendants' characterization of the van as stolen. Plaintiff does not, however, dispute that the NCIC system

2

arrive. (*Id.* ¶¶ 4-5.) At the time of the stop, Carmichael was the driver, Mitchell was in the front passenger seat, and Plaintiff and Fox were in the backseat. (Pl.'s SUMF ¶¶ 9, 16.)

The stop lasted about twenty-five minutes, during which Plaintiff was detained and not free to leave. (*Id.* ¶ 13.) The occupants were ordered to exit the vehicle with their hands above their heads, then each was forcefully apprehended and placed in handcuffs.[4] (*Id.*) During the stop, other Clinton Township police officers arrived on the scene, including Sergeant Thomas DeRosa. (Defs.' SUMF ¶ 9.) All four vehicle occupants were from New York City, with Carmichael and Mitchell holding identification from the Bronx and Plaintiff and Fox from Brooklyn. (*Id.* ¶ 10.)[5] While at the scene, Sergeant DeRosa was told that the owner of the van was supposedly related to one of the occupants and Carmichael, the driver, claimed that he spoke to the owner earlier in the day. (*Id.* ¶ 20.)[6] Additionally, the occupants suggested that the van

---

listed the van as stolen or that dispatch told Officer Sangiovanni the van was stolen. Plaintiff quotes from Officer Sangiovanni's deposition testimony in her own SUMF: "when I ran the vehicle's registration, it came back stolen . . . Once dispatch verified that it was stolen and confirmed it, I . . . pulled the vehicle over. . ." (Pl.'s SUMF ¶ 10.)

[4] Plaintiff takes issue with the officers' treatment of the passengers during the stop (*see* Pl.'s Resp. to Defs.' SUMF ¶ 8); however, these facts are not material to the Court's analysis of the claims and Plaintiff's response contains improper legal arguments that may not be raised in a response to a Rule 56.1 statement (*See id.* ("[I]f this method of carrying out an investigation of how to respond to passengers in a stolen vehicle is a utilized 'police practice,' then such practice is patently improper and may be deemed an admission in contravention of *Monell* and its progeny.").)

[5] Plaintiff characterizes this information as "not a statement of material fact" and states that no response is necessary; however, the Court disagrees, especially where the New York Police Department was the agency that reported the vehicle stolen. (*See* Pl.'s Resp. to Defs.' SUMF ¶ 10.) Because the statement was not properly disputed, it is deemed admitted. *See* L.Civ.R. 56.1(a).

[6] Plaintiff characterizes this information as "not a statement of material fact" and states that no response is necessary; however, the Court disagrees. Further, Plaintiff insufficiently disputes the characterization that Plaintiff was "out of the stolen van" at the "scene of the stop" because Plaintiff does not cite to a portion of the record that indicates the arrest was occurring while the

3

was in their possession for potentially a couple of weeks, but NCIC data reflected the date of the theft was a day before the stop. (*Id.*) Sergeant DeRosa placed a call to the Hunterdon County Prosecutor's office to ask what charges should be brought against which occupants. (*Id.* ¶ 21.) He spoke with Assistant Prosecutor Sweeney, informed him of the circumstances of the stop, and that one of the occupants claimed that the van was his cousin's vehicle, but that the occupant supposedly spoke with his cousin that day, after having not been in contact with him for two weeks. (*Id.* ¶ 27.)[7] Sweeney told Sergeant DeRosa to charge all four occupants with receiving stolen property and that further investigation was required to determine if charges could be downgraded or disposed of. (*Id.* ¶ 30.)[8] Officer Sangiovanni was the arresting and charging officer. (*Id.* ¶ 33.) Plaintiff, Carmichael, Fox, and Mitchell were transported to the police station for processing. (*Id.* ¶ 32.) On the same afternoon, Plaintiff's bail hearing was conducted in

---

conversation happened. (*See* Pl.'s Resp. to Defs.' SUMF ¶ 20.) The remainder of the first paragraph is improper legal argument. (*See id.*) As to the final paragraph of this response, Plaintiff: (i) discusses information that the Clinton PD purportedly obtained after the arrests, which the Court deems immaterial to its analysis; and (ii) makes arguments regarding inferences to be drawn from the facts, inappropriate for inclusion in a response to a 56.1 statement. *See* L.Civ.R. 56.1.

[7] Again, Plaintiff responds by asserting that "[t]he statement is not a statement of material fact within the meaning of Rule 56" and "[n]o response is necessary." (Pl.'s Resp. to Defs.' SUMF ¶ 27.) Plaintiff further responds with improper argument and no citation to the record in dispute, stating that "[t]o the extent a response is required, A.P. Sweeney's approval of defendant Sangiovanni's prior act to falsely arrest and charge plaintiff, along with Sweeney's decision not to decline prosecution, served to compound Sangiovanni's false arrest and charge of plaintiff." (*Id.*)

[8] Plaintiff fails to properly dispute the statement with a citation to the record, again claiming the statement is immaterial and does not require a response, and includes a paragraph of legal argument about the offense of receiving stolen property and whether a charge was proper. (Pl.'s Resp. to Defs.' SUMF ¶ 30.) The Court deems this fact to be admitted.

municipal court. (*Id.* ¶ 47.)[9] The judge set bail in the amount of $7,500, which Plaintiff was unable to post. (*Id.* ¶ 54.)[10] Plaintiff was held in Somerset County Jail for a period of time.[11] (*Id.*) On January 29, 2016, the Hunterdon County Prosecutor's Office dismissed the criminal charge against Plaintiff. (Pl.'s SUMF ¶ 36.)

On February 13, 2017, Plaintiff filed this action against Defendants bringing five counts: (I) a claim pursuant to 42 U.S.C. § 1983 against Defendants for violation of the Due Process Clause of the Fourteenth Amendment; (II) violation of the New Jersey State Civil Rights Act ("NJCRA") and the New Jersey Constitution; (III) false arrest and illegal imprisonment against Officer Sangiovanni; (IV) a *Monell* claim against the Township and the Clinton PD; and (V) malicious prosecution against all Defendants. (*See generally* Compl.; Defs.' SUMF ¶ 57.)[12] In general, Plaintiff alleges that Officer Sangiovanni lacked the probable cause required to arrest her, as she was unknowingly a passenger in a stolen vehicle. (*See generally* Compl.)

---

[9] Plaintiff responds by asserting that "[t]he statement is not a statement of material fact within the meaning of Rule 56" and "[n]o response is necessary." (Pl.'s Resp. to Defs.' SUMF ¶ 47.) The Court deems the fact admitted.

[10] Plaintiff responds by asserting that "[t]he statement is not a statement of material fact within the meaning of Rule 56" and "[n]o response is necessary." (Pl.'s Resp. to Defs.' SUMF ¶ 54.) The Court deems this fact admitted and includes this information for context.

[11] Plaintiff asserts that she was in jail from December 4, 2015 through December 15, 2015 and cites an answer to an interrogatory to support this assertion. (Pl.'s Resp. to Defs.' SUMF ¶ 54 (citing Pl.'s Answer to Interrog. 16).) The interrogatory, however, does not reflect the date of her release, just that "bail was reportedly set at $7,500.00, no 10% initially" and "[u]pon the bail being reduced and modified to $5,000.00 with 10%, [P]laintiff's daughter promptly posted bail." (Pl.'s Answer to Interrog. 16, Leeds Declaration, Ex. K, ECF No. 26-2.)

[12] The Complaint, in its introductory paragraph, also purports to bring claims pursuant to 42 U.S.C. §§ 1981, 1985, 1986, and 1988; however, the counts in the Complaint and Plaintiff's response to Defendants' Statement of Material Facts regarding the claims at issue do not reflect that Plaintiff seeks relief under these statutes. (*See generally* Compl.; Pl.'s Resp. to Defs.' SUMF ¶ 57.)

Plaintiff moved for partial summary judgment seeking: (i) a declaratory judgment and partial summary judgment on her claims against Officer Sangiovanni for unlawful arrest and/or seizure under the Fourth Amendment and NJCRA; (ii) a declaratory judgment and partial summary judgment that Officer Sangiovanni is not entitled to qualified immunity; and (iii) a declaratory judgment and partial summary judgment against the Township on her *Monell* claim. (Pl.'s Moving Br. 20, ECF No. 22.) Defendants moved for summary judgment on all claims. (*See generally* Defs.' Moving Br., ECF No. 23-6.)

## II. Legal Standard

### A. Summary Judgment

Summary judgment is appropriate if the record demonstrates "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). A material fact—a fact "that might affect the outcome of the suit under governing law," *Anderson*, 477 U.S. at 248—raises a "genuine" dispute if "a reasonable jury could return a verdict for the non-moving party." *Williams v. Borough of W. Chester*, 891 F.2d 458, 459 (3d Cir. 1989) (quoting *Anderson*, 477 U.S. at 250). To determine whether a genuine dispute of material fact exists, the Court must consider all facts and reasonable inferences in a light most favorable to the non-movant. *Curley v. Klem*, 298 F.3d 271, 276-77 (3d Cir. 2002). The Court will not "weigh the evidence and determine the truth of the matter" but will determine whether a genuine dispute necessitates a trial. *Anderson*, 477 U.S. at 249.

The party moving for summary judgment has the initial burden of proving an absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986). Thereafter, the nonmoving party creates a "genuine [dispute] of material fact if sufficient

6

evidence is provided to allow a jury to find for him at trial." *Gleason v. Norwest Mort., Inc.*, 243 F.3d 130, 138 (3d Cir. 2001).

### III. Discussion

#### A. Plaintiff's Motion for Summary Judgment

##### 1. Plaintiff's Position

Plaintiff moves for summary judgment on three grounds. First, she argues that her arrest by Officer Sangiovanni was without probable cause and objectively unreasonable, based on "imaginative hunches" and "empty speculation." (Pl.'s Moving Br. at 6-7.) According to Plaintiff, the unlawful arrest occurred when the police stopped the van and detained Plaintiff, which constituted an unlawful seizure in violation of the Fourth Amendment of the U.S. Constitution and the New Jersey State Civil Rights Act. (*Id.* at 7, 20.) Second, Plaintiff claims that Officer Sangiovanni is not entitled to qualified immunity for his alleged Fourth Amendment violation. (*Id.* at 20.) Finally, she contends that the Township, through certain customs and policies, created the constitutional violation at the center of the action. (*Id.* at 18.) Specifically, according to Plaintiff, the Township "failed to train its officers relating to the legalities of arrest of a passenger in a stolen vehicle." (*Id.* at 19.) Plaintiff asserts that such training is constitutionally mandated, and a failure to train police officers properly subjects the Township to liability. (*Id.*)

##### 2. Defendants' Position

Defendants, on the other hand, argue that Officer Sangiovanni's actions do not rise to a constitutional violation. (Defs.' Opp'n Br. 4, ECF No. 27-1.) Defendants argue that Plaintiff's presence in a stolen car and Officer Sangiovanni's supervisor's call to the Hunterdon County Prosecutor's Office, were enough to establish probable cause to arrest Plaintiff and her fellow

occupants. (*Id.* at 18-20.) Defendants also state that "Plaintiff supplies no opinion from a police practices expert to opine, let alone suggest, that no reasonable officer in [Officer] Sangiovanni's position would have concluded there was no probable cause for the arrests." (*Id.* at 22.) Defendants argue that they are, therefore, entitled to qualified immunity and cannot be subjected to suit in the present action. (*Id.*) Finally, Defendants state that Plaintiff has no basis to assert that Township unconstitutional customs and policies violated Plaintiff's rights. (*Id.* at 25.)[13]

## B. Defendants' Motion for Summary Judgment

### 1. Defendants' Position

Defendants move for summary judgment and raise arguments similar to those included in their opposition to Plaintiff's motion. First, Defendants argue that because there was probable cause to arrest Plaintiff, Defendants are entitled to qualified immunity from suit. (Defs.' Moving Br. 4-15.) Second, Defendants assert that the Clinton PD is not a proper defendant because it is a department of a municipality and not a separate legal entity. (*Id.* 16.) Third, Defendants contend that because Plaintiff has not demonstrated an unconstitutional act, she cannot as a matter of law prevail on her *Monell* claim. (*Id.* at 16-19.) Finally, Defendants move for summary judgment on the New Jersey Constitution and NJCRA claims because the Court's analysis of those claims is analogous to its analysis of the federal claims that must be dismissed. (*Id.* at 20.)[14]

---

[13] Defendants also assert that they are entitled to qualified immunity based on Officer DeRosa's call to the Prosecutor's Office. (Defs.' Opp'n Br. 20-21.) They assert that the call was made after the occupants were ordered out of the van but before charges were imposed. (*Id.* at 20.) Plaintiff asserts that the call occurred after her arrest. (*See, e.g.*, Pl.'s Resp. to Defs.' SUMF ¶ 21.) The Court need not address these arguments, as it bases its decision on other grounds.

[14] Defendants note that the Complaint does not allege a cause of action for denial of adequate medical care, but the "Facts" portion of the Complaint states that Plaintiff was "never afforded medical treatment." (Defs.' Moving Br. 21.) Defendants argue that if this statement were to be construed as a claim for a denial of medical care, it must be asserted against the jail in which the person was in custody. (*Id.*) Plaintiff does not respond to this issue in opposition. (*See*

### 2. Plaintiff's Position

Plaintiff, in opposition, incorporates the arguments made in her summary judgment moving brief and asserts that Officer Sangiovanni had no probable cause to arrest her and Defendants are not entitled to qualified immunity. (Pl.'s Opp'n Br. 1-4, ECF No. 26.) She asserts that absence of a court ruling on an issue does not indicate that a right was not clearly established. (*Id.* at 3-4.) All that is required to defeat a qualified immunity defense, according to Plaintiff, was that a defendant had "fair warning" his conduct was unconstitutional. (*Id.* at 3.) As to the *Monell* claim, Plaintiff asserts that she has evidence of two policies or customs, and cites to Defendants' Statement of Material Facts to support her claim: (i) "per police practice for a reported stolen vehicle, Officer Sangiovanni had all occupants exit the stolen van one at a time having had the operator turn the engine off and drop the keys on the ground outside the driver's door"; and (ii) "[Assistant Prosecutor] Sweeney believed there was a well-grounded suspicion to conclude that the occupants were in direct or constructive possession of a confirmed stolen vehicle . . . ." (*Id.* at 13-14 (quoting Defs.' SUMF ¶¶ 8, 29).) As to the first alleged policy, Plaintiff argues that Defendants have a policy to remove and arrest occupants from a stolen car without probable cause, and the policy promulgates the execution of false arrest. (*Id.* at 15.) As to the second alleged policy, Plaintiff asserts that by Assistant Prosecutor Sweeney approving the arrest, the policy provides for an "automatic arrest and automatic finding of probable cause where none may exist." (*Id.* at 16.) Plaintiff does not respond to Defendants' arguments regarding her claims under state law.

---

*generally* Pl.'s Opp'n Br.) The Court, therefore, declines to construe this statement as claim for denial of medical care.

9

C.  **Analysis**

   1. **Fourth Amendment False Arrest**

To prevail on a claim under § 1983, a plaintiff must prove: (i) the violation of a right secured by the Constitution and laws of the United States; and (ii) that the alleged deprivation was committed or caused by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). "The New Jersey Civil Rights Act creates a private cause of action for violations of civil rights secured under the New Jersey Constitution." *Payano v. City of Camden*, No. 13-2528, 2016 WL 386040, at *2 (D.N.J. Feb. 1, 2016) (citing *Trafton v. City of Woodbury*, 799 F. Supp. 2d 417, 443 (D.N.J. 2011)). The District of New Jersey interprets the NJCRA in the same manner as § 1983. *Hottenstein v. City of Sea Isle City*, 977 F. Supp. 2d 353, 365 (D.N.J. 2013); *see also Rezem Family Assocs., LP v. Borough of Millstone*, 423 N.J. Super. 103 (N.J. Super. Ct. App. Div. 2011). The Court, therefore, combines its analyses of Plaintiff's claims under the New Jersey and United States Constitutions.

The Fourth Amendment's protection against unreasonable searches and seizures prevents police officers from arresting individuals without probable cause. *Orsatti v. N.J. State Police*, 71 F.3d 480, 482 (3d Cir. 1995) (citing *Papachristou v. City of Jacksonville*, 405 U.S. 156, 169 (1972)); *see also Rodriguez v. City of Passaic*, 730 F. Supp. 1314, 1319-23 (D.N.J. 1990), *aff'd*, 914 F.2d 244 (3d Cir. 1990) ("Art. 1, ¶ 7 of the New Jersey Constitution virtually replicates the Fourth Amendment to the United States Constitution and decision under the latter will be dispositive of the former."). Further, the Third Circuit has stated that:

> Probable cause to arrest requires more than mere suspicion; however, it does not require that the officer have evidence sufficient to prove guilt beyond a reasonable doubt. Rather, probable cause to arrest exists when the facts and circumstances within the arresting officer's knowledge are sufficient in themselves to warrant a

*reasonable person* to believe that an offense has been or is being committed by the person to be arrested.

*Id.* at 482-83 (citations omitted) (emphasis added). The existence of probable cause at the time of arrest is typically a question for the jury; however, absent a dispute of material fact, the Court may resolve the issue as a matter of law. *Merkle v. Upper Dublin Sch. Dist.*, 211 F.3d 782, 788-89 (3d Cir. 2000). "Courts must instead objectively assess whether, at the time of the arrest and based upon the facts known to the officer, probable case existed 'as to any offense that could be charged under the circumstances.'" *Rankines v. Meyrick*, No. 14-1842, 2016 WL 545134, at *3 (D.N.J. Feb. 10, 2016) (citing *Wright v. Philadelphia*, 409 F.3d 595, 602 (3d Cir. 2005)); *Barna v. Perth Amboy*, 42 F.3d 809, 819 (3d Cir. 1994)).

The central issue, therefore, is whether or not the undisputed facts of the case warrant a reasonable person in Officer Sangiovanni's situation to believe that Plaintiff had committed or was committing a criminal offense. Here, the Court finds that they do. The Eastern District of Pennsylvania ruled on a case substantially similar to the present action. The district court, in finding probable cause for the arrest of a passenger in a stolen vehicle, stated:

> When balancing the interests of the individual riding in a stolen car against those of society[,] it is clear that the interests of society prevail. A finding of no probable cause forces police to allow potential criminals in such a situation to go free only to be able to hinder society again by repeating the crime. On the other hand, a finding of probable cause allows the police to detain the occupant of a stolen car long enough to find out what involvement, if any, the suspect had in the theft itself. The decision here is an easy one. The interests of society must prevail in this situation. The burden to the individual who had nothing to do with the car's theft will, after explanation, be minimal.

*Sanders v. Philadelphia*, 209 F. Supp. 2d 439, 442 (E.D. Pa. 2002).

The Court notes that both parties discuss the facts and information that law enforcement learned after the arrest; however, *post hoc* justifications for probable cause are not relevant, as the Court must make its assessment "based upon the facts known to the officer" and "at the time

of the arrest." *See Wright*, 409 F.3d at 602. Officer Sangiovanni encountered a vehicle on a highway in New Jersey, registered in Pennsylvania, reported as stolen in New York, and occupied by four individuals with New York identification. "While it is true [P]laintiff was not operating the automobile, a prudent person is perfectly justified in believing that a passenger is somehow involved in the theft whether it be as an accomplice, conspirator or primary suspect." *Sanders*, 209 F. Supp. 2d at 442. Plaintiff's "apparent voluntary presence[, therefore,] in a stolen automobile gives sufficient probable cause to warrant arrest and further investigation by the police." *Id.*; *see also Apostol v. City of New York*, No. 11-3851, 2014 WL 1271201, at *4 (E.D.N.Y. Mar. 26, 2014) ("[D]efendants had probable cause to arrest [the passenger in this] car. It is undisputed that, after observing the illegally parked vehicle, defendants searched for the car's plates in the [New York State Police Information Network ("NYSPIN")] database, which indicated that the car's license plates were stolen. NYSPIN provides reasonably trustworthy information, and therefore, the officers reasonably believed that plaintiffs were sitting in a stolen vehicle.").

Plaintiff argues that, essentially, police were "in a position to discover" that the circumstances of the stolen car report were unusual because Hayes, the vehicles' owner, is a Philadelphia resident that reported his car stolen in New York. (Pl.'s Reply Br. 2, ECF No. 29.) Plaintiff asserts that a "clear-thinking law enforcement group" would have, based on the facts, made a series of "reasonable inferences" that: (1) Hayes knew where his vehicle was located because he called the New York City authorities; (2) Hayes knew with whom the vehicle was located, again, because he reported the vehicle stolen to New York City authorities; (3) Hayes knew why his vehicle was in New York, *i.e.*, he initially allowed his van to be used by someone he knew resided there; and (4) the police and Hayes were aware or should have been aware that

the owner's previous authorization "should have struck the opposite chord of an actual car theft." (*Id.* at 2-3.) The Court finds that this attenuated argument lacks merit.

In connection with the false arrest analysis, Plaintiff also appears to argue that Officer Sangiovanni violated her constitutional rights by ordering her to exit the vehicle at the traffic stop. (*See* Pl.'s Moving Br. 13.) The Court disagrees. "Once a vehicle has been lawfully stopped, an officer may ask the driver to step out of the vehicle." *United States v. Richardson*, 504 F. App'x 176, 181 (3d Cir. 2012) (citing *Pennsylvania v. Mimms*, 434 U.S. 106, 111 (1997)). "An officer may also order 'passengers to get out of the car pending completion of the [traffic] stop.'" *Id.* (quoting *Maryland v. Wilson*, 519 U.S. 408, 415 (1997)). Here, the NCIC database listed the van Plaintiff was riding in as stolen, and the Court finds that Officer Sangiovanni had probable cause to stop the vehicle. Ordering Plaintiff to exit the car, therefore, did not violate Plaintiff's constitutional rights. To the extent that Plaintiff raises this argument, Plaintiff's motion for summary judgment on this ground is denied.

Plaintiff's briefing relies heavily on an opinion from a case in the Eastern District of Pennsylvania, *Brennan v. Springfield Township*, that has since been withdrawn from publication and vacated. *Brennan v. Springfield Twp.*, No. 97-5217, 1998 WL 381707 (E.D. Pa. July 8, 1998), *vacated and withdrawn from publication*. Plaintiff asserts on reply that there is no indication that the opinion was overturned or reversed by an appellate court or by the *Brennan* court itself. (Pl.'s Reply Br. 7.) The Court, however, reviewed the Third Circuit's docket in the appellate matter, docket number 98-1696, and on February 25, 1999, the court granted the parties' joint motion for a partial remand to the district court for an entry of an order vacating the opinion, order, and judgment. On March 9, 1999, the district court ordered that its opinion be vacated and withdrawn from publication. (E.D. Pa. Docket No. 97-5271, ECF No. 52.) The

Court, therefore, affords no weight to the *Brennan* decision. Plaintiff further relies on a case from the Ninth Circuit, *Rohde v. City of Roseburg*, 137 F.3d 1142 (9th Cir. 1998); however, no court in the Third Circuit has adopted its reasoning, and the Court declines to do so here. Plaintiff also cites a Ninth Circuit case on reply to argue that the stop was actually an arrest, *Green v. City and County of San Francisco*, 751 F.3d 1039 (9th Cir. 2014). This case, however, does not change the outcome here. Plaintiff has not carried her burden to demonstrate that she is entitled to summary judgment, and accordingly, Plaintiff's motion for summary judgment on her false arrest claim is, therefore, denied. Because the Court finds probable cause to arrest, Defendants' motion for summary judgment on Plaintiff's false arrest claim is granted.

### 2. Qualified Immunity

"'The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Montanez v. Thompson*, 603 F.3d 243, 249-50 (3d Cir. 2010) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)) (citation omitted). Courts conduct a two-step test to determine the applicability of qualified immunity:

> First, a court must decide whether the facts that a plaintiff has alleged or shown make out a violation of a constitutional right. Second, if the plaintiff has satisfied this first step, the court must decide whether the right at issue was clearly established at the time of a defendant's alleged misconduct. Qualified immunity is applicable unless the official's conduct violated a clearly established constitutional right.

*Id.* at 250 (citation omitted). "'Where a defendant asserts a qualified immunity defense in a motion for summary judgment, the plaintiff bears the initial burden of showing that the defendant's conduct violated some clearly established statutory or constitutional right.'" *Trafton*, 799 F. Supp. 2d at 432 (quoting *Sherwood v. Mulvihill*, 113 F.3d 396, 399 (3d Cir. 1997)). "Only if the plaintiff carries this initial burden must the defendant then demonstrate that

14

no genuine [dispute] of material fact remains as to the 'objective reasonableness' of the defendant's belief in the lawfulness of his actions." *Id.* at 432. A court may address the prongs in the order it sees fit, based on the facts of the case. *Id.* (citing *Pearson v. Callahan*, 555 U.S. 223, 236 (2009)). Here, as discussed above, Plaintiff has not demonstrated "a violation of a constitutional right." Plaintiff's motion for summary judgment on this ground is, therefore, denied and Defendants' motion for summary judgment as to qualified immunity is granted.

### 3. *Monell*

"Under § 1983, a municipality may be held liable when it causes a constitutional violation through the implementation of a policy, custom, or practice." *Wolf v. Escala*, No. 14-5985, 2015 WL 2403106, at *17 (D.N.J. May 20, 2015) (citing *Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 691 (1978)). "A municipality[, therefore,] cannot be held liable on a *Monell* claim absent an underlying constitutional violation." *Johnson v. Philadelphia*, 837 F.3d 343, 354 (3d Cir. 2016) (citing *Grazier ex rel. White v. Philadelphia*, 328 F.3d 120, 124 (3d Cir. 2003)). Because the Court finds that no constitutional violation took place, Plaintiff's motion for summary judgment is denied on this ground, and Defendants' motion is granted.

### 4. **Remainder of Claims**

"To survive summary judgment for false arrest, malicious prosecution, and false imprisonment, a plaintiff is required to show that the underlying arrest was not supported by probable cause." *Boyd v. City of Jersey City*, No. 15-0026, 2018 WL 2958468, at *4 (D.N.J. June 13, 2018) (citing *Anderson v. Perez*, 677 F. App'x 49, 51-52 (3d Cir. 2017) (affirming grant of summary judgment after finding that plaintiff's "claims that require an absence of probable cause—false arrest, malicious prosecution, and false imprisonment—fail"); *Lawson v. City of Coatesville*, 42 F. Supp. 3d 664, 673 (E.D. Pa. 2014) (stating that the "threshold question" for

15

plaintiff's Fourth Amendment claims for false arrest, unlawful search, false imprisonment, and malicious prosecution is whether there was probable cause to arrest him)); *Wildoner v. Borough of Ramsey*, 162 N.J. 375, 389 (N.J. 2000) ("Because probable cause is an absolute defense to Plaintiff's false arrest, false imprisonment, and malicious prosecution claims, and his Section 1983 claims, the central issue in this appeal is whether there was probable cause, or, alternatively, whether it was objectively reasonable for the officers to believe that probable cause existed at the time of plaintiff's arrest."). Having found that probable cause existed to arrest Plaintiff, the malicious prosecution and false imprisonment claims under state and federal law fail, and summary judgment is granted to Defendants on the remainder of the claims.

## IV. Conclusion

For the reasons set forth above, Plaintiff's motion for partial summary judgment is denied and Defendants' motion for summary judgment is granted. An Order consistent with this Memorandum Opinion will be entered

s/ Michael A. Shipp<br>
**MICHAEL A. SHIPP**<br>
**UNITED STATES DISTRICT JUDGE**

**Dated**: August 31, 2018